**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK PIROZZI and KEILA GREEN, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Cause No.: 4:19-cv-00807-CDP |
| v. | ) ) | |
| MASSAGE ENVY FRANCHISING, LLC, a Delaware Corporation | ) ) ) | |
| Defendant. | ) | |

**<u>PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND</u>**
**<u>INCORPORATED MEMORANDUM IN SUPPORT</u>**

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND .................................................................................................... 2

        A.      Plaintiffs' Claims ....................................................................................... 2

        B.      The Course of This Litigation ................................................................... 3

                1.      Motions to Dismiss and to Strike Class Allegations................................. 3
                2.      Motion for Summary Judgment ................................................................ 4
                3.      Removal to Federal Court ......................................................................... 5
                4.      Mediation ................................................................................................ 6

III.    THE SETTLEMENT AGREEMENT ...................................................................... 7

        A.      The Class.................................................................................................... 7

        B.      Monetary Relief for the Classes................................................................ 8

        C.      The Class Release ..................................................................................... 9

IV.     PRELIMINARY APPROVAL AND SUBSEQUENT DEVELOPMENTS.................... 9

        A.      The Order of Preliminary Approval........................................................... 9

        B.      Subsequent Developments ...................................................................... 10

V.      ARGUMENT: THE SETTLEMENT SHOULD BE APPROVED................................ 12

        A.      The Settlement Agreement Meets the New Rule 23(e) Concerns ......................... 14

                1.      Procedural Concerns ............................................................................... 15
                2.      Substantive Concerns............................................................................... 15

        B.      The Settlement Agreement Meets the Additional *Van Horn* Factors .................. 30

VI.     CONCLUSION...................................................................................................... 31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burnett v. Griffith*,
  769 S.W.2d 780 (Mo.1989) ........................................................................ 18

*Burrow v. Forjas Taurus S.A.*,
  2019 WL 4247284 (S.D. Fla. Sept. 6, 2019) ........................................... 29

*Chong v. Parker*,
  361 F.3d 455 (8th Cir. 2004) ................................................................... 18

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................... 29

*Claxton v. Kum & Go, L.C.*,
  2015 WL 3648776 (W.D. Mo. June 11, 2015) ....................................... 19

*Cty. of Monmouth, New Jersey v. Fla. Cancer Specialists, P.L.*,
  2019 WL 1487340 (M.D. Fla. Apr. 4, 2019) ...................................... 13-14

*Devlin v. Scardelletti*,
  536 U.S. 1 ................................................................................................. 30

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ........................................... 29

*Hudson v. Libre Tech. Inc.*,
  2020 WL 2467060 (S.D. Cal. May 13, 2020) ......................................... 28

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ........................................... 13

*Huyer v. Njema*,
  847 F.3d 934 (8th Cir. 2017) ............................................................ Passim

*In re Apple iPhone 4 Prods. Liab. Litig.*,
  2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) ................................... 26-27

*In re Online DVD–Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ................................................................... 27

*In re Packaged Ice Antitrust Litig.*,

2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ........................................................ 27

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ................................................... 29

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   892 F.3d 968 (8th Cir. 2018) .......................................................................... 13

*In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*,
   716 F.3d 1057 (8th Cir. 2013) ............................................................. 12, 13, 25

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   396 F.3d 922 (8th Cir. 2005) ....................................................................Passim

*Kautsch v. Premier Commc'ns*,
   2008 WL 11426766 (W.D. Mo. Nov. 20, 2008) ................................................ 30

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ....................................................................Passim

*LaGarde v. Support.com, Inc.*,
   2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) .................................................. 26

*Little Rock School District v. Pulaski County Special School District No. 1*,
   921 F.2d 1371 (8th Cir. 1990) ........................................................................ 12

*Marshall v. National Football League*,
   787 F.3d 502 (8th Cir. 2015) .................................................................... 25, 30

*McLeod v. Bank of Am., N.A.*,
   2019 WL 1170487 (N.D. Cal. Mar. 13, 2019) ................................................. 14

*Perez v. Asurion Corp.*,
   501 F.Supp.2d 1360 (S.D. Fla. 2007) .............................................................. 27

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ........................................................................ 19

*Poertner v. Gillette Co.*,
   618 Fed.Appx. 624 (11th Cir. 2015) ............................................................... 26

*Pollard v. Remington Arms Co., LLC*,
   320 F.R.D. 198 (W.D. Mo. 2017) ................................................................... 27

*Pollard v. Remington Arms Co., LLC*,
   896 F.3d 900 (8th Cir. 2018) .......................................................................... 26

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ......................................................................... 16, 18

*Shaw v. Toshiba America Information Systems, Inc.*,
    91 F.Supp.2d 942 (E.D. Tex. 2000) ...................................................................... 30

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................................... 8

*Swinton v. SquareTrade, Inc.*,
    2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ......................................................... 13

*Swinton v. SquareTrade, Inc.*,
    2020 WL 1862470 (S.D. Iowa Apr. 14, 2020) ................................................. 13, 28

*Theodore Broomfield v. Craft Brew All., Inc.*,
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .......................................................... 28

*Thorogood v. Sears, Roebuck & Co.*,
    547 F.3d 742 (7th Cir. 2008) ................................................................................ 29

*Touhey v. United States*,
    2011 WL 3179036 (C.D. Cal. July 25, 2011) ........................................................ 27

*Trombley v. Bank of Am. Corp.*,
    2012 WL 1599041 (D. R.I. May 4, 2012) .............................................................. 27

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ........................................................ 13, 16, 24, 30

**Statutes**

28 U.S.C. § 1332(d)(2) ............................................................................................ 3, 5

28 U.S.C. § 1446(b) ..................................................................................................... 5

Mo. Rev. Stat. § 407.010 *et seq.* ................................................................................ 2

Mo. Rev. Stat. § 537.675.3 ......................................................................................... 19

**Rules**

Fed. R. Civ. P. 23(a)……………………………………………………………………..10

Fed. R. Civ. P. 23(a)(4) .............................................................................................. 15

Fed. R. Civ. P. 23(b)(3)……………………………………………………………………10

Fed. R. Civ. P. 23(e) …………………………………………………………… 13, 14

Fed. R. Civ. P. 23(e)(1)(B)(i)……………………………………………………… 12

Fed. R. Civ. P. 23(e)(2)…………………………………………… 12, 13, 14, 30

Fed. R. Civ. P. 23(e)(2)(A) …………………………………………………… 15

Fed. R. Civ. P. 23(e)(2)(B) …………………………………………………… 15

Fed. R. Civ. P. 23(e)(2)(C) …………………………………………………… 16

Fed. R. Civ. P. 23(e)(2)(D) …………………………………………………… 28, 29

Fed. R. Civ. P. 23(e)(2)(C)(i)………………………………………………...19, 24

Fed. R. Civ. P. 23(e)(2)(C)(ii)………………………………………………….26

Fed. R. Civ. P. 23(e)(2)(C)(iii)………………………………………………...27

Fed. R. Civ. P. 23(e)(2)(C)(iv)………………………………………………...28

Fed. R. Civ. P. 23(e)(3)……………………………………………………… 14, 16

**Other Authorities**

Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaign* (Sept. 2019)……………………………………………………...26, 27

T. Eisenberg, M. Heise *et al.*, *The Decision to Award Punitive Damages: An Empirical Study*, 2 J. Legal Analysis 57 (2010)…………………………………………………………18

Plaintiffs Mark Pirozzi and Keila Green ("Plaintiffs"), respectfully request that this Court grant final approval of the parties' Amended Settlement Agreement ("Settlement"). Pursuant to the parties' Settlement, each Class Member who made a valid claim will receive a $7 cash payment, an amount that represents approximately 92% of the value of the hands-on massage minutes that Plaintiffs allege was promised but not received for the average Class Member's first Non-Member massage. As Plaintiffs set forth in their motion for preliminary approval last November,[1] this is an excellent outcome for the Class. Since then, thousands of Class Members have made claims and not one Class Member objected to the Settlement. Only six out of the 220,175 Class Members requested exclusion. Accordingly, Plaintiffs request that the Court approve the Settlement as fair, reasonable and adequate. In support thereof, Plaintiffs state the following:

## I.      INTRODUCTION

This proposed Settlement is fair, reasonable, and adequate, and is the product of extensive arm's-length negotiations between counsel for Plaintiffs and Defendant Massage Envy Franchising, LLC ("MEF"), with the assistance and guidance of the Honorable Michael David as mediator. The Court should grant final approval because the Settlement provides fair and reasonable monetary relief to the Class and avoids the inherent risks, delays, and expense associated with continued, protracted class action litigation. As explained below, the terms are consistent with applicable case law and easily satisfy all applicable criteria for approval.

Each Class Member who made a valid claim will receive a cash payment in the amount of $7.00. For the average Class Member, a $7 cash payment represents approximately 92% of the

---

[1] Plaintiffs' Motion for Preliminary Approval of Settlement and Incorporated Memorandum in Support ("Preliminary Approval Motion"), Doc. #34 at 1.

value of the hands-on massage minutes that Plaintiffs allege was promised but not received for the Class Member's first Non-Member massage. While Plaintiffs sought to recover the value of the hands-on massage minutes that they alleged were not received during all Non-Member massages, MEF argued that Class Members knew after the first Non-Member massage that approximately ten minutes went to activities other than hands-on massage, and Plaintiffs acknowledge that they would have had difficulty recovering for those subsequent massages.

In sum, this is a robust Settlement that provides substantial benefits to the Class Members. As explained below, the parties have established all necessary prerequisites for final approval, as set forth by case law in the Eighth Circuit.

## II.      BACKGROUND

### A.  Plaintiffs' Claims[2]

This action arises out of Plaintiffs' claims that MEF misrepresented the length of its non-member massages, in that Class Members received massage sessions that only included 50, 80, or 110 minutes or less of hands-on massage time despite advertising and marketing massages or massage sessions that were one-hour, 90-minutes, or two-hours long, respectively. Plaintiff Mark Pirozzi brought this lawsuit in January 2017 in the Circuit Court of St. Louis County, Missouri, on behalf of himself and a putative class of similarly situated Missouri consumers. Class Action Petition, Doc. #1-1, Pages: 14-83. He sought damages and injunctive relief under the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq*. ("MMPA"), due to MEF's alleged misrepresentations regarding the length of its massages and sought to recover for himself and Class Members the value of the 10 minutes of hands-on massage time that they did not receive. He also sought interest, costs, and attorneys' fees.

---

[2] This section is repeated from Plaintiffs' Preliminary Approval Motion.

Following MEF's motion to dismiss the original Petition and to strike the class allegations, Mr. Pirozzi filed an amended petition. Doc. #1-1, Pages: 152-227. The amended petition limited the scope of the lawsuit to "one-hour introductory," or first-time, massages. That was based on the belief, which turned out to be untrue, that only first-time customers could receive a massage at an introductory price ("Introductory Massage"). After learning in discovery that, after a period of time without a massage, a customer can obtain another introductory massage, and that he had therefore had two such Introductory Massages within the limitations period, Mr. Pirozzi filed his Second Amended Petition to make that clear. Doc. #7. Because Mr. Pirozzi purchased several non-Introductory Massages of 1-hour and longer, his Second Amended Petition included claims for all 1-hour, 1½-hour, and 2-hour non-member massages. The Second Amended Petition also added Keila Green as a second plaintiff. Following the Second Amended Petition, MEF removed the case to the United States District Court for the Eastern District of Missouri pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

**B.  The Course of This Litigation[3]**

This lawsuit has been hotly contested from the beginning and has seen many contested motions filed by both sides.

**1.  Motions to Dismiss and to Strike Class Allegations**

After Mr. Pirozzi filed his original petition, MEF moved to dismiss and to strike the class allegations. Doc. #1-1, Pages: 105-108. MEF argued in part that Mr. Pirozzi failed to allege that he suffered an injury since he purportedly had knowledge of what he was purchasing, that it was not liable as the franchisor, and that Mr. Pirozzi failed to allege a deceptive or unfair practice under the MMPA. In seeking to strike the class allegations, MEF argued that the proposed

---

[3] This section is repeated from Plaintiffs' Preliminary Approval Motion.

classes were deficient because they were overbroad and that Mr. Pirozzi was not an adequate

class representative. After Mr. Pirozzi filed his amended petition, MEF again moved to dismiss

and to strike the class allegations based on similar arguments as before. Doc. #1-1, Pages: 254-

257. Following extensive briefing (*see generally* Doc. #1-1, Pages: 258-486) and an oral

argument (Doc. #1-1, Page: 487), the circuit court denied MEF's motion in its entirety. Order of

11/13/2018, Doc. #1-1, Pages: 488-492.

### 2.  Motion for Summary Judgment

The day after the circuit court entered its Order denying MEF's motion to dismiss and to

strike the class allegations, MEF moved for summary judgment.[4] MEF argued that Mr. Pirozzi's

claims were barred by the statute of limitations on the ground that his Introductory Massage

occurred in 2009. It also argued that Mr. Pirozzi had not suffered an ascertainable loss, an

essential element under the MMPA. Subsequent to MEF's motion for summary judgment,

Plaintiff learned during discovery that if enough time has passed between massages, a customer

can obtain another Introductory Massage. Because Mr. Pirozzi learned that he had purchased two

such Introductory Massages within the limitations period, he sought leave to file his Second

Amended Petition to make this clear, in addition to the other changes set forth above. MEF

opposed Plaintiff's motion for leave to file his Second Amended Petition.[5] Mr. Pirozzi also

contested MEF's arguments that he did not suffer an ascertainable loss.[6] On March 15, 2019, the

circuit court heard oral argument on Mr. Pirozzi's motion for leave and MEF's motion for

summary judgment. On March 19, 2019, the circuit court granted Mr. Pirozzi's motion for leave,

---

[4] Doc. #1-1, Pages: 555-558; *see also* Defendant's Suggestions of Law in Support of Defendant's Motion for Summary Judgment on All Claims, Doc. #1-1, pages 559-579; and Defendant's Statement of Uncontroverted Material Facts, Doc. #1-1, Pages: 493-505.
[5] Doc. #1-4, Pages 1-21.
[6] *See* Suggestions in Opposition to Defendant's Motion for Summary Judgment. Doc. #1-2, Pages: 416-448.

allowing him to file the Second Amended Petition. Doc. #1-4, Pages: 136-137. MEF's motion for summary judgment remained under submission.

### 3.   Removal to Federal Court

Instead of answering Plaintiffs' Second Amended Petition in state court, MEF removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Doc. #1, Notice of Removal. Plaintiffs moved to remand the case back to state court based on the 30-day deadline to file a notice of removal under 28 U.S.C. § 1446(b).[7] Plaintiffs argued that, based on a declaration that MEF relied on to support its removal, MEF had determined, based on calculations prior to the case being filed, that potential actual damages were approximately $1,500,000, and that with attorneys' fees and punitive damages, MEF knew prior to 30 days before it removed that the amount in controversy exceeded CAFA's $5 million jurisdictional limit. This Court remanded the case, but instead relied on its inherent power to determine subject-matter jurisdiction, and found it lacking primarily due to the speculative nature of Plaintiffs' punitive damages claim. Memorandum and Order of Remand, Doc. #23. ("Remand Order"). Following that Order, MEF filed a Petition for Permission to Appeal in the United States Court of Appeals for the Eighth Circuit. Doc. #24-1. Plaintiffs filed their Response to MEF's Petition for Permission to Appeal on August 5, 2019, and MEF filed its reply on August 14, 2019. On September 17, 2019, the United States Court of Appeals for the Eighth Circuit granted MEF's Permission to Appeal, reversed the Remand Order, and remanded the case to this Court for further proceedings.

---

[7] Doc. #11, Plaintiffs' Motion for Remand and Incorporated Memorandum in Support.

### 4. Mediation

This Settlement results from a voluntary mediation between the parties on September 19, 2019, before the Honorable Michael David, former Circuit Court Judge for the 22nd Judicial Circuit of Missouri, and currently a mediator with ALARIS, as the neutral. Prior to and in preparation for that mediation, MEF provided Plaintiffs with documents and spreadsheets containing information regarding the number of Class Members and the prices the Class Members paid for the massage sessions at issue in this lawsuit. Because only limited discovery of this nature had occurred at the time of the mediation, Plaintiffs' counsel had informed MEF's counsel that it required such information prior to the mediation. Plaintiffs' counsel spent significant time analyzing the data provided by MEF prior to the mediation, as well as engaging with MEF's counsel to ensure that they had a proper understanding of the data prior to the mediation.

After a long day of mediation, the parties reached agreement. They agreed on a claims-made process, pursuant to which MEF agreed to pay each claimant $7.00 up to an aggregate cap of $1.6 million. MEF insisted on (and Plaintiffs thought reasonable) a claims-made process in light of the fact that MEF and the database used by its franchisees does not have email or physical addresses for all Class Members. Only after the parties agreed to those terms did they discuss the payment of attorneys' fees and costs. MEF agreed that they would not oppose and would pay a capped amount of attorneys' fees and costs of 25% of the Settlement Fund, or $400,000, and capped incentive fees for Plaintiff Pirozzi of $6,500 and Plaintiff Green of $3,500, as approved by the Court.

## III.    THE SETTLEMENT AGREEMENT[8]

Following the mediation, the parties continued to engage in arm's-length negotiations over the terms of a formal settlement agreement ("Settlement Agreement" or "Sett. Agrt."). Those discussions continued for approximately two months before the parties memorialized their Settlement Agreement, Doc. #34-1. Pursuant to the Court's Order of April 6, 2020, Doc. #42, Plaintiffs filed their Amended Class Action Settlement Agreement and Release ("Amended Settlement Agreement" or "Am. Sett. Agrt.") on April 10, 2020; it is attached hereto as Ex. A, as contemplated by Rule 23(e)(3).[9] Here is a summary of its most important terms. Capitalized terms herein that are not otherwise defined have the same meaning as they are given in the Amended Settlement Agreement.

### A.  The Class

The Class is defined as follows:

> "CLASS" or "CLASS MEMBERS" means all individuals in the state of Missouri who purchased a "1-hour," "1½-hour," or "2-hour" NON-MEMBER MASSAGE SESSION at an ME LOCATION between January 31, 2012, through the date of PRELIMINARY APPROVAL.  Excluded from the CLASS are: (1) any person who is an employee, director, officer, or agent of MEF, an ME LOCATION, or any of the RELEASED PARTIES; (2) any judge, justice, judicial officer, or judicial staff of the COURT; and (3) CLASS COUNSEL, MEF's COUNSEL, and any of their attorneys and staff.

Am. Sett. Agrt. ¶ I.A.K.

Class Members were allowed to opt out of the Settlement, in which case they would not be bound by any orders or judgments in this case, not receive a $7 cash payment, and not be affected by the Amended Settlement Agreement. *Id.*, ¶ VI.A, B. Those who opt out would also not release any claims by virtue of the Amended Settlement Agreement or be entitled to object to

---

[8] This section is taken from Plaintiffs' Preliminary Approval Motion, with updates only reflecting the conclusion of the claims period and the parties' Amended Class Action Settlement Agreement and Release.
[9] The Amended Settlement Agreement is also in the court file as Doc. #43-1.

it. *Id.* In total, only 6 of the 220,175 Class Members opted out of the Settlement. Those Class

Members who did not opt out of the Settlement are referred to herein as the "Settlement Class"

or "Settlement Class Members."

### B.  Monetary Relief for the Class

Subject to a damages cap and on a claims-made basis, each Settlement Class Member who

submitted a claim was entitled to receive a cash payment in the amount of seven dollars ($7.00)

from the Settlement Fund. Am. Sett. Agrt., ¶ IV.26. MEF agreed to pay a total of $1.6 million in

settlement, of which $1.09 million is available for a $7 payment to each Class Member who

submitted a claim. *Id.* at ¶ I.KK.

The Settlement Fund was sufficient to pay $7 to 86.5% of the Class, assuming a Class of

180,000 and that 86.5% of that Class submitted claims. Although the actual Class is

approximately 22.3% larger than the parties' assumed Class size (comprising 220,175

individuals instead of 180,000) because of the passage of time between when the data was

compiled for the September 2019 mediation and the April 13, 2020 preliminary approval, each

Class member will still receive $7. This is because, as of August 31, 2020, approximately 9,825

Class Members submitted a claim. This claims rate (4.5% of the Class and 5.6% of those who

received direct notice) is in line with the parties' expectations because, as the Eighth Circuit has

observed, "consumer claim filing rates rarely exceed seven percent, even with the most extensive

notice campaigns." *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (quoting *Sullivan v. DB

Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011)). Had the claims exceeded the $1.09 million

cap, each Settlement Class Member submitting a valid claim would have received a cash

payment in the amount of his or her *pro rata* share of the Net Settlement Fund. *Id*. at ¶ IV.26.

### C.  The Class Release

All Settlement Class Members (*i.e.*, Class Members who did not opt out), will release MEF from claims related to the subject matter of this case. The detailed release language can be found in Section XI of the Agreement.

## IV.  PRELIMINARY APPROVAL AND SUBSEQUENT DEVELOPMENTS

### A.  The Order of Preliminary Approval

On April 13, 2020, the Court entered its Order for Preliminary Approval of Class Action Settlement ("Preliminary Approval"), Doc. #44, preliminarily approving the Settlement as "fair, reasonable, and adequate." *Id.* at 1, ¶ 2.

The Court found that the notice plan in the Amended Settlement Agreement is "the best means practicable of providing notice under the circumstances and constitutes a reasonable manner of notice to all class members who would be bound by the SETTLEMENT," and that it complied with the Federal Rules of Civil Procedure and the requirements of due process. Preliminary Approval, 5. The Court appointed and designated Epiq Class Acton & Claims Solutions, Inc., the entity proposed by the parties, as Claims Administrator, and directed it to distribute the SUMMARY NOTICE approved by the Court and to create a settlement website ("Settlement Website"), www.missourimassagesessions.com, providing information regarding the SETTLEMENT. *Id.* at 6-7. The Court directed the Claims Administrator to begin disseminating notice and to unveil the Settlement Website within 45 days of the date of the Preliminary Approval Order. *Id*. at 10.

The deadline for Class Members to mail objections or a request for exclusion was 60 days after the notice date. *Id*. at 11. Any objection not timely made was deemed waived and foreclosed. *Id.* at 8. The Court also set a deadline for the Fee and Expense Award and Incentive

Fee Award of 25 days following the notice date. *Id*. at 10. Furthermore, it stated that the Class Representatives' Motion for Final Approval shall be filed no later than 45 days following the Objection/Exclusion deadline. *Id*. at 12.

As part of its Preliminary Approval Order, for purposes of, and solely in connection with the parties' Settlement, the Court conditionally certified the Class. *Id*. at 2. The Court found that such certification satisfied the requirements under Federal Rules of Civil Procedure 23(a) and 23(b)(3). *Id*. Furthermore, it appointed and designated Mark Pirozzi and Keila Green as Class Representatives for the Class and undersigned counsel as Class Counsel for the Class. *Id*. at 4.

The Final Approval Hearing was set for Friday, November 13, 2020 at 9:30 a.m. *Id*. at 12. The Court stated at such hearing it will "determine all necessary matters concerning the AMENDED AGREEMENT, including whether the proposed SETTLEMENT is fair, adequate, and reasonable; whether this COURT should grant FINAL APPROVAL; whether there should be any FEE AND EXPENSE AWARD and/or INCENTIVE AWARD, and the amounts of any such awards." *Id*.

## B.  Subsequent Developments

Timely notice went out to Class Members. *See* Ex. B, Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Program. According to Mr. Azari, the Notice Database included 220,175 records of potential Class Members, of which 178,074 contained a valid email and/or mailing address. *Id*. at 9, ¶ 17. On May 28, 2020, 121,966 email notices were sent to potential Class Members for whom there were valid email addresses. *Id*. at 9, ¶ 18. That same day, Epiq mailed 56,108 postcard notices via first-class mail to all identifiable Class Members for whom it did not have an available email address. *Id*. at 10, ¶ 20. On June 19, 2020, Epiq mailed via first-class mail 17,660 postcard notices to Class Members for whom the email notice was undeliverable and for whom a physical mailing address was available in the

records that MEF provided. *Id*. at 11, ¶ 20. Based on postcard notices that were returned as undeliverable, Epiq re-mailed 7,936 postcard notices to Class Members following its additional public record research. *Id*. at 11, ¶ 24. Mr. Azari stated that either a postcard or email notice was delivered to 174,052 of the 178,074 Class Members to whom Epiq sent notice, meaning a deliverable rate of 97.7% "and that individual notice reached approximately 79% of the 220,175 Class Members." *Id*. at 11, ¶ 25. Epiq also ran banner notices on Google, Facebook, and Instagram from May 28, 2020 through July 27, 2020, which generated approximately 57.9 million impressions. *Id*. at 12, ¶ 28.

The Settlement Website was launched on May 27, 2020. *Id*. at 13, ¶ 33. This website provided detailed information about the Settlement, including the Long Form Notice, Claim Form, and Amended Settlement Agreement. *Id*. at 13, ¶ 33. As of August 10, 2020, there were 37,849 unique visitors to the Settlement Website. *Id*. at 13, ¶ 34. Class Members could submit a claim on the Settlement Website until August 31, 2020, a month after the claim deadline. *See* Ex. C, Suppl. Decl. of Cameron R. Azari ¶ 5. Mr. Azari stated that the notice program provided the "best notice practicable under the circumstances of this Case." Ex. B, Azari Decl. at 8, ¶ 14.

Although Epiq is reviewing pending claims, as of August 31, 2020, Epiq had received 9,825 Claim Forms (9,685 online and 140 paper). Ex. C, Suppl. Decl. ¶ 5. Mr. Azari stated that 520 Claim Forms were received after the July 27, 2020 claim deadline. *Id.* Although that number may change after Epiq completes its review, the total claims rate as of August 31, 2020, was approximately 5.6% (9,825 divided by 174,052 delivered direct notices). Although 520 of the 9,825 total claims received as of August 31 are untimely because they were received after the claim deadline (*id.* ¶ 5) and thus could be rejected, despite Mr. Azari's statement that this could result in a reduction of the total number of valid Claim Forms (*id*.), the parties have agreed to

accept all claims made on or before August 31, 2020 (even though this date is more than a month

after the claim deadline). This is not much less that the 7% that the Eighth Circuit found to be the

response rate that is rarely exceeded. *Keil*, at 697. As set forth below in Plaintiffs' analysis of the

method of distributing relief to the Class, the results are comparable to, or even better than, most

similar campaigns. Furthermore, as measured by objections and opt-outs, the reaction of Class

Members has been overwhelmingly positive. There were only 6 requests for exclusion from the

Settlement and no objections to the Settlement. *Id*. at 14, ¶ 37.

## V.     ARGUMENT: THE SETTLEMENT SHOULD BE APPROVED

In granting preliminary approval and directing that notice of the Settlement be given to the

Class, the Court was required to determine that it would likely be able to approve the proposed

Settlement under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B)(i). Since the Court granted

preliminary approval, nothing has happened to show that that expectation was misplaced. Indeed,

based on the fact that not a single Class Member has objected to the Settlement and only six

opted out, the grounds for approval are even stronger now.

In reviewing proposed class settlements, courts begin with the guiding principle that "a class

action settlement is a private contract negotiated between the parties" and is "presumptively

valid." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005); *In

re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir.

2013); *see also Little Rock School District v. Pulaski County Special School District No. 1*, 921

F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors agreements, and courts should

approach them with a presumption in their favor."). The court's role in reviewing a negotiated

class settlement is simply to "ensure that the agreement is not the product of fraud or collusion

and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless*, 396 F.3d at 934.

Both before and after it was amended in December 2018, Fed. R. Civ. P. 23(e) required judicial review to determine that any "[s]ettlement, [v]oluntary [d]ismissal, or [c]ompromise" of the claims, issues, or defenses of a certified class is "fair, reasonable, and adequate." Before that amendment, the Eighth Circuit required a district court to consider four factors in making that determination: (1) the merits of the plaintiff's case, weighted against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Uponor,* 716 F.3d at 1063 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). These were called the "*Van Horn* factors." *See In re Target Corp. Customer Data Sec. Breach Litig*., 892 F.3d 968, 978 n. 8 (8th Cir. 2018).

The December 2018 amendment added to what must be considered but did not eliminate those factors. As the Advisory Committee notes, "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes, 2018 Amendments, Subdivision (e)(2), 324 F.R.D. 904, 918. One court recently noted that "[t]hese changes are mostly form over substance ...." *Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019). Thus, district courts have continued to consider factors that had been established prior to this amendment. *See Swinton v. SquareTrade, Inc.*, 2020 WL 1862470, at *5 (S.D. Iowa Apr. 14, 2020) (considering pre-existing Eighth Circuit factors, along with Rule 23(e)(2) concerns); *Huffman v. Prudential Ins. Co. of Am.,* 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (considering pre-existing Third Circuit factors); *Cty. of Monmouth, New Jersey v. Fla. Cancer Specialists, P.L.*, 2019 WL 1487340, at *2-*3 (M.D. Fla.

Apr. 4, 2019) (same as to Eleventh Circuit factors); *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2019 WL 1170487, at *3 (N.D. Cal. Mar. 13, 2019) (same as to Ninth Circuit factors).

The amended Rule 23(e)(2) focuses on four "core concerns of procedure and substance." The Rule provides:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > **(A)** the class representatives and class counsel have adequately represented the class;
> >
> > **(B)** the proposal was negotiated at arm's length;
> >
> > **(C)** the relief provided for the class is adequate, taking into account:
> >
> > > **(i)** the costs, risks, and delay of trial and appeal;
> > >
> > > **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > **(iv)** any agreement required to be identified under Rule 23(e)(3); and
> >
> > **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

This Settlement meets both the new Rule and the *Van Horn* factors.

**A.  The Settlement Agreement Meets the New Rule 23(e) Concerns**

As shown below, this Settlement meets all of the Rule 23(e) factors.

### 1. Procedural Concerns

#### a. The Class Representatives and Class Counsel Have Adequately Represented the Class.

The Court must first determine whether the Class Representatives and Class Counsel have adequately represented the Class. Rule 23(e)(2)(A). In conditionally and preliminarily certifying the Class as part of the Court's Preliminary Approval Order, the Court found that the adequacy-of-representation requirement of Rule 23(a)(4) had been met and that Plaintiffs and their counsel would adequately represent the Class. Doc. #44 at 2-3. The Court's confidence is warranted, as shown by the robustness of the Settlement that the Class Representatives and Class Counsel achieved and the long and difficult litigation and negotiations needed to accomplish that result.

#### b. The Proposal was Negotiated at Arm's Length.

Under Rule 23(e)(2)(B), the second factor is whether the proposal was negotiated at arm's length. In granting preliminary approval, this Court found that it was. Preliminary Approval Order at 2, ¶ 2. That finding was correct. The parties conducted a lengthy mediation session under the direction of Judge David, as mediator, and then continued to negotiate on the written Settlement Agreement for approximately two months. This was not a colluded settlement in any sense.

### 2. Substantive Concerns

#### a. The Relief Provided for the Class is Adequate

The third factor is whether the Settlement provides adequate relief to the Class, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);

Rule 23(e)(2)(C). This concern, including subfactor (i), overlaps with the first and third *Van Horn* factors, (1) the merits of the plaintiff's case, weighted against the terms of the settlement and (3) the complexity and expense of further litigation. Thus, the *Van Horn* line of cases on these factors are pertinent. *Van Horn* stated: "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn*, 840 F.2d at 607. According to the Eighth Circuit, which recently quoted that passage, that is still the case in determining whether the Settlement provides adequate relief. *See Rawa v. Monsanto Co.*, 934 F.3d 862, 868 (8th Cir. 2019) (quoting *Van Horn*, 840 F.2d at 607). Because the framers of the amended rule included the risks of trial and appeal, that factor still applies.

The terms of this Settlement – which were agreed to with the assistance of a well-respected mediator and former long-time Circuit Judge after lengthy arm's-length negotiations – provide substantial benefits to Class Members. Plaintiffs' attorneys certainly have confidence in the strength of their case, but as evidenced by the numerous substantive motions already filed by MEF during the litigation, there would have been many substantive issues that they would have had to overcome if they had successfully certified the class and taken the case to trial. Thus, as in *Keil v. Lopez*, this factor "weighs in favor of approving the settlement because 'the outcome of the litigation would be far from certain' if the case had not settled, … whereas 'the settlement provides substantial benefits to the class ....'" 862 F.3d 685, 695 (8th Cir. 2017) (citations omitted).

###### i.   Benefits to the Class from the Settlement

Settlement Class Members who submitted a claim will receive a cash payment in the amount of $7.00. For Class Members, $7.00 represents the vast majority of the value of the hands-on massage time that Plaintiffs allege they were promised and paid for but did not receive for their first massage during the Class Period. Based on the numbers provided by MEF prior to the mediation, when taking into account the varying lengths of massage sessions (1-hour, 1½-hour, and 2-hour) and the average price paid for such sessions, the average value of the ten minutes that Class Members were allegedly promised and paid for but did not receive during the Class Period is approximately $7.58. Thus, a recovery of $7.00 represents 92.35% of the value of such minutes for Class Members' first massage session. Although Plaintiffs sought to recover for more than Class Members' first massages and believe that they have a valid argument for such a recovery, MEF strongly contested their ability to do so because, after their first massages, customers fully knew that approximately ten minutes of a massage session was spent on non-hands on massage activities. This remained an issue in MEF's motion for summary judgment, and Plaintiffs recognize that they faced a significant hurdle in persuading the Court and/or jury that customers who knew that the actual hands-on massage time was 10-minutes less than the time of the session could recover for the value of those 10 minutes and that a class would be certified based upon these facts. Thus, it is entirely reasonable to limit Class Members' settlement payment to the value of the ten minutes at issue in their first massage, particularly where the settlement payment represents such a high percentage of the value of such minutes. Achieving this result at trial would have constituted a very positive result for Class Members. Obtaining this Settlement without the expense, time, and uncertainties involved in taking the case to trial is of significant value to the Class Members, particularly when the certification of the class also was an uncertainty. As the Eighth Circuit has repeatedly stated, "a settlement is a

product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *Rawa*, 934 F.3d at 869 (quoting *Keil*, 862 F.3d at 696).

One consideration that potentially affects what Class Members might recover at trial is punitive damages in connection with Plaintiffs' MMPA claims, as the MMPA allows punitive damages. Yet, that does not mean that the Settlement is inadequate because it does not include anything for punitive damages. "Only outrageous conduct stemming from an 'evil motive or reckless indifference' can give rise to an award of punitive damages" under Missouri law. *Chong v. Parker*, 361 F.3d 455, 458–59 (8th Cir. 2004) (*quoting Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo.1989)). Jury awards of punitive damages are rare, even where plaintiffs prevail on claims for compensatory damages.[10]

In fact, this Court has been skeptical of the allegations in Plaintiffs' Second Amended Petition as they relate to punitive damages and found that, when seeking to remove the case MEF only offered "speculation and guesswork to support its position that millions of dollars in … punitive damages could be awarded." Memorandum and Order of Remand, Doc. #23, at 13. The Court stated that Plaintiffs only made "conclusory allegations" regarding MEF's conduct that allegedly gave rise to punitive damages and that it was therefore "nearly impossible to determine from the language of the state court petition whether a reasonable fact finder might conclude that punitive damages are even applicable." *Id*. at 12. Moreover, this Court stated that based on the nature of the allegations, it was "more likely that a reasonable fact finder would not award several million dollars in punitive damages . . .," that Plaintiffs' damages are purely economic, and that Plaintiffs include no claim that "Massage Envy's alleged conduct targeted a particularly

---

[10] T. Eisenberg, M. Heise *et al.*, *The Decision to Award Punitive Damages: An Empirical Study*, 2 J. Legal Analysis 57, 57 (2010).

vulnerable group or that its actions had particularly egregious repercussions." Accordingly, as this Court has recognized, Plaintiffs would likely have a difficult time recovering any award of punitive damages should the case proceed through trial, let alone a large award of punitive damages.

Furthermore, under Mo. Rev. Stat. § 537.675.3, Class Members would have to pay 50% of any punitive damage award to the State. In *Claxton v. Kum & Go, L.C.*, 2015 WL 3648776 (W.D. Mo. June 11, 2015), the court found that "[i]t is reasonable that the class would want to settle and receive immediate relief rather than wait and face a motion for summary judgment regarding punitive damages or uncertainty at trial on the issue of punitive damages." *Id.* at *5-6. *See also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999) (affirming the approval of a settlement that did not include punitive damages even though two opt-out class members had received punitive damages in their individual trials). Therefore, this Settlement is adequate even though it does not include an amount for punitive damages.

Moreover, the $1,090,000 in the Net Settlement Fund available to pay Settlement Class Members' valid claims will be more than sufficient to pay each valid claim; thus no reduction of the $7.00 available for each Class Member will be necessary.

### ii.    The Merits of the Case and Risks of Trial[11]

Rule 23(e)(2)(C)(i) requires the Court to consider the risks of trial and appeal. Plaintiffs believe that they have a strong case, but MEF contends that Plaintiffs did not suffer an ascertainable loss and denies that it violated the MMPA and intended to vigorously oppose any certification motion. MEF has raised many issues that must be considered in determining the likelihood that Plaintiffs would prevail at trial or that, if they did, how much they would recover.

---

[11] This section is repeated from Plaintiffs' Preliminary Approval Motion, except for the subsection relating to class certification.

In *Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017), the court found that this factor weighed in favor of approving the settlement because "Plaintiffs' ability to recover by proceeding to trial was not inevitable." In *In re Wireless*, 396 F.3d at 933, the court affirmed approval of a settlement based on the district court's finding "that the outcome of the litigation would be far from certain." The same considerations are present and warrant approval here.

*Issues Related to the Claims of Plaintiffs and the Class*

There are several unresolved issues related to the claims of Plaintiffs and the Class. They pertain to whether the Class Period would begin in January 2012 or March 2014, whether MEF's statements were deceptive, whether Plaintiffs and Class Members suffered an ascertainable loss, whether they can recover for any massages after their introductory massage, whether they can recover for massages that occurred after MEF's changes to its website in 2016 eliminated the alleged misrepresentations, and whether the Court would certify the Class. The parties have previously disagreed over whether Mr. Pirozzi had an introductory massage within the statute of limitations period, but, with the addition of Ms. Green as a party, MEF's argument on this point is unlikely to have any bearing on issues affecting the Class should this case proceed, and accordingly, this issue is not addressed further here. Yet, if the case proceeded, MEF would continue to contest whether Ms. Green's claims relate back to Mr. Pirozzi's original filing, and this issue could potentially shorten the limitations period by two years. *Seem e.g.,* MEF Opp'n to Mot. for Leave to File Sec. Am. Compl. [Doc. 1-4] at A2951-52.

**Whether any statement by MEF was deceptive**. Throughout this litigation, MEF has maintained that its advertising, marketing, and promotional materials cured the alleged deceptive practices. First, MEF has argued that those materials refer to massage *sessions*, not simply to massages, and that any massage *session* includes time for consultation, dressing, and undressing,

20

leaving less than one hour for hands-on massage time. Second, and relatedly, MEF has argued

that each customer received his or her full one-hour (or other allotted time) session, regardless of

their potentially mistaken belief as to what *session* meant. Third, MEF has argued that statements

on its website and in other media disclose that each *session* includes time for consultation,

dressing, and undressing, thereby correcting the alleged deception.

Plaintiffs have consistently rejected these arguments—maintaining that adding *session* does

not cure the alleged deception, that promotional materials frequently referred to "massages"

without modification and that any statements purportedly correcting the alleged deception were

nearly impossible to find and/or insufficient to cure the alleged deception.

Although Plaintiffs believe their arguments would prevail, as in *Huyer*, 847 F.3d at 939, and

*In re Wireless,* 396 F.3d at 933, the outcome of these issues is "far from certain" and "not

inevitable."

**Whether Plaintiffs suffered an ascertainable loss.** While MEF only argued in its motion

for summary judgment that Mr. Pirozzi had not suffered an ascertainable loss (Ms. Green had not

yet been added as a party), many of its arguments could and/or would be applicable to Ms. Green

or other Class Members. MEF raised several different arguments as to why Mr. Pirozzi did not

suffer damages or an ascertainable loss.[12] MEF argued that Mr. Pirozzi was not damaged, and

therefore suffered no ascertainable loss, because he paid less for his Massage Envy massage

sessions than what he pays his regular massage therapist. Suggestions in Support at 8-9. It also

argued that he suffered no ascertainable loss because of his purported testimony that he knew his

massage session would include non-hands-on massage activities and that his continued purchases

---

[12] *See* Suggestions of Law in Support of Defendant's Motion for Summary Judgment on All Claims, Doc. #1-1,
Pages: 559-579 ("Suggestions in Support"), Reply in Support of Motion for Summary Judgment, Doc. #1-3, Pages:
1245-1267 ("Reply in Support").

of massages showed he did not care about any advertisement about the length of the hands-on massage time. *Id*. at 10. Similarly, relying on analogous federal district court decisions, MEF argued that because Mr. Pirozzi knew that the length of a massage session was longer than the amount of hands-on massage time yet continued to purchase massage sessions, he was not injured and therefore did not suffer an ascertainable loss. Reply in Support, 7-11.

Mr. Pirozzi contended in his opposition to MEF's motion for summary judgment[13] that MEF was misconstruing the applicable standard as to whether he suffered an ascertainable loss. He argued that this determination depended on whether he received the benefit of his bargain, which, based on MEF's misrepresentations about the length of his massages, he did not. *See* Suggestions in Opposition, 17-19. He also argued that ascertainable loss is not dependent on the price of competitive products, that knowledge of the truth does not enter into the ascertainable loss analysis, and that making continued purchases does not affect whether a plaintiff suffered ascertainable loss. *Id*. Plaintiffs believe they have properly alleged, and can prove, that they suffered an ascertainable loss, yet as in *Huyer*, 847 F.3d at 939, and *In re Wireless,* 396 F.3d at 933, the outcome of that issue is "far from certain" and "not inevitable."

**Whether Plaintiffs and Class Members can recover for more than one massage.** As set forth above, MEF has argued, and would almost certainly continue to argue, that at least after their first massage sessions, Class Members knew that ten minutes of the session went toward activities other than hands-on massage time yet purchased them anyway. Thus, MEF contends, even if Class Members have a valid claim in connection with their first massage session (which it denies), they cannot recover for any subsequent massage sessions. Reply in Support, 4-5. Mr. Pirozzi contended in his Suggestions in Opposition that an individual's knowledge isn't part of

---

[13] Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment, Doc. #1-2, Pages: 416-448 ("Suggestions in Opposition").

the ascertainable loss analysis and therefore shouldn't preclude recovery. Suggestions in Opposition, 18-19. But, as discussed above, MEF relied on federal district court decisions that appear to favor its argument, and the parties believe that the chances are good that this Court would follow those decisions. Accordingly, it is "far from certain" and "not inevitable" that a fact finder would rule in Plaintiffs' favor with respect to their ability to recover for more than one massage when he or she went into the transaction with full knowledge of truth. *See Huyer*, 847 F.3d at 939; *In re Wireless*, 396 F.3d at 933.

**Inclusion of Class Members who received massages after October 2016.** In arguing in its summary judgment motion that Mr. Pirozzi was not entitled to injunctive relief, MEF claimed that Mr. Pirozzi admitted that MEF "removed the allegedly 'deceptive statements' from its website" in October 2016.[14] As set forth in Plaintiffs' Second Amended Petition, Plaintiffs alleged that MEF changed its practices (at least on its website) in October 2016 after previously being sued over its practices.[15] Plaintiffs contend that MEF was still misrepresenting the length of massages in other places, such as on signs posted in spas, but the change on MEF's website means that recovering for massages occurring after the website change would likely have been more difficult. It is definitely not certain or inevitable that a fact finder would find that Class Members who received massages after in October of 2016 would be entitled to recover. *See Huyer*, 847 F.3d at 939; *In re Wireless*, 396 F.3d at 933.

**Class certification**. Plaintiffs argued in their Preliminary Approval Motion that the proposed Class satisfies all requirements of Rule 23 and that this Court should certify the Class for purposes of this Settlement. The Court did so in its Order of Preliminary Approval, but as requested, such certification was conditional and only in connection with the Settlement. Doc.

---

[14] Suggestions in Support, 16.
[15] Second Amended Petition, ¶ 13.

#44, at 2-3. However, it is "far from certain" and "not inevitable" that this Court would grant a contested motion for class certification. *In re Wireless*, 396 F.3d at 933; *Huyer*, 847 F.3d at 939. MEF has previously challenged the Class allegations, arguing that they are deficient due to the presence of numerous individualized questions as to whether individual Class Members suffered any injury.[16] It also argued that the requirements of typicality and adequacy of representation are not met and that the proposed Class is overbroad. *Id*. To cite just two examples: As noted above, MEF contends that Mr. Pirozzi always knew that a massage session would include time for non-hands-on massage activities; Plaintiffs would have to overcome the argument that common questions do not predominate in light of the individual question of the Class Members' knowledge of whether 10 minutes would be non-hands-on massage time. Another defense argument is that Mr. Pirozzi regularly paid more for massages from his regular massage therapist than he did for Massage Envy massage sessions. That might also present an individual issue that would preclude certification. Accordingly, MEF intended to contest class certification. Thus, there is a risk that the Class would not be certified.

*Summary Regarding Benefits and Risk*

As discussed above, it is "far from certain" and "not inevitable" that the Class would prevail at trial and recover an amount equal to what it will receive in this Settlement. *See Huyer*, 847 F.3d at 939; *In re Wireless*, 396 F.3d at 933. On the other hand, the Settlement provides substantial benefits to the Class. Thus, this factor weighs heavily in favor of approval.

### iii.    The Costs and Delays of Trial and Appeal

In ruling on this Motion, the Court must also consider "the costs ... and delay of trial and appeal." Rule 23(e)(2)(C)(i). The costs and delays are similar to the third *Van Horn* factor, the

---

[16] Suggestions of Law in Support of Defendant's Motion to Dismiss Plaintiff's Amended Petition and to Strike Class Allegations, Doc. #1-1, Pages: 258-277.

"complexity and expense of further litigation." *Keil*, 862 F.3d at 695. This factor is easily met

because class actions, in general, "place an enormous burden of costs and expense upon [ ]

parties." *Marshall v. National Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (citation

omitted). In *In re Uponer*, 716 F.3d at 1063, this factor "weighed in favor of approval because

'class actions place an enormous burden of costs and expense upon the parties.'" (citation

omitted).

That is the case here, where, absent settlement, much discovery and motion practice would

still need to be conducted. There would be significant costs associated with the continued

production and review of documents by both sides – including costly ESI term searches and

associated productions – followed by depositions of fact and expert witnesses. Only depositions

of Mr. Pirozzi and the owner of one Massage Envy franchise were taken at the time of

mediation, but proving Plaintiffs' MMPA claims would likely necessitate the testimony of one or

more MEF executives, as well as other employees with knowledge relating to Plaintiffs' claims.

In addition, the parties would likely present competing expert testimony.

Briefing class certification would involve complex legal issues and require extensive

amounts of the parties' time. Furthermore, given that MEF moved for summary judgment in state

court, a motion that remained under advisement at removal, it is likely that MEF re-urge or re-

file the same or a similar motion here. Drafting and responding to such a motion (as updated to

reflect any pertinent developments in the case and current case law) would again require the

parties to address complex issues, such as the existence of ascertainable loss under the MMPA,

and would take significant time to brief. The parties have spent many hundreds of hours

litigating this case up to the date of the settlement (the time spent by Plaintiffs' counsel alone,

including its support staff, is over 800 hours), yet many more hours would be expected were this

case to continue to trial. The costs associated with such time and required work would be expensive and protracted. Accordingly, this factor weighs in favor of preliminary approval.

### iv.   Method of Distributing Relief to the Class

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Rule 23(e)(2)(C)(ii). Plaintiffs outlined that method above. *See supra,* Section IV.B. It was both efficient and effective. Most Class Members received personal notice by email and/or postcard. As approved by the Court, that notice explained in clear and simple terms the relief that the Class Member would receive and how to make a claim. The claims process was administered by Epiq, an experienced and well-respected claims administrator. Settlement Class Members who made a claim will receive their payments 30 days following the Effective Date. Am. Sett. Agrt., ¶ I.A.F.

Furthermore, the preliminary claims rate of greater than five percent is on par with, if not higher than, the claims rate in similar cases, and it certainly does not suggest that the method of distributing relief to the class was ineffective. In a recent preliminary report on a study of 149 class-action settlements with a median compensation of $69, the Federal Trade Commission reported that "the average claims rate for campaigns using primarily postcards and email was about 6% and 3%, respectively"; however, overall, when weighted by the number of recipients, the mean claims rate was 4%.[17] Moreover, in *Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 906 (8th Cir. 2018), the court approved a settlement where only 0.29% submitted claims for vouchers of $10 or $12. The district court in *Pollard* noted that courts across the country have approved class action settlements with a claims rate of less than one percent[18] and that many

---

[17] Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaign* (Sept. 2019) at 11, available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (accessed 9/2/2020).

[18] Citing *Poertner v. Gillette Co.*, 618 Fed.Appx. 624, 625–26 (11th Cir. 2015) (roughly .75%); *LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *2–10 (N.D. Cal. Mar. 26, 2013) (.17%); *In re Apple iPhone 4 Prods.*

other courts have approved settlements with a claims rate in the single digits.[19] *Pollard v.*

*Remington Arms Co., LLC*, 320 F.R.D. 198, 214-215 (W.D. Mo. 2017). The greater than 5%

preliminary claims rate here exceeds all of the cases the district court cited in *Pollard*. In

addition, here, of total claims submitted, 100% were accepted, compared to the 86% overall

approval rate acceptable to the FTC.[20]

### v. Attorneys' Fees

In determining whether the relief provided to the Class is adequate, the Court must also

consider "the terms of any proposed award of attorney's fees, including timing of payment."

Rule 23(e)(2)(C)(iii). Plaintiffs submitted their requests for fees in a separate motion.[21] They did

so on June 22, 2020, more than a month before the deadline for objections to the Settlement,

allowing Class Members to review it before deciding whether to object.

No Class Members objected to the fee application or any other aspect of the Settlement. That

is not surprising, because as set forth in Plaintiffs' Application, the request for attorneys' fees

and costs totaling $400,000 (25% of the aggregate cap of $1.6 million), is at the low end of

percentages courts approve for attorneys' fees in consumer class actions. The fee and cost award

will be paid 30 days following the Effective Date. Am. Sett. Agrt., ¶¶ X.A.66 and XII. Insofar as

attorneys' fees are concerned, this factor weights in favor of approval of the Settlement.  The

Settlement is therefore fair, reasonable and adequate.

---

*Liab. Litig.*, 2012 WL 3283432, at *1–3 (N.D. Cal. Aug. 10, 2012) (between .16% and .28%); *Trombley v. Bank of Am. Corp.*, 2012 WL 1599041, at *2 (D. R.I. May 4, 2012) (.9%); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) (less than 1%).

[19] Citing *In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 944–45 (9th Cir. 2015) (less than 4%); *Touhey v. United States*, 2011 WL 3179036, at *7–8 (C.D. Cal. July 25, 2011) (2%); *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1377–78 (S.D. Fla. 2007) (1.1%).

[20] Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaign*, at 11.

[21] Plaintiffs' Application for Attorneys' Fees and Incentive Awards ("Application"), Doc. #45; Plaintiff's Memorandum in Support of their Application for Attorneys' Fees and Incentive Awards, Doc. #46.

### vi.  The Settlement Agreement

The final factor the Court is to consider in determining whether the Settlement provides adequate relief to the Class is the Settlement Agreement itself. Rule 23(e)(2)(C)(iv). That agreement was submitted with the Notice of Corrected Settlement Agreement (Doc 43-1) and is explained in detail above.

### b.  The Settlement Treats Class Members Equitably Relative to Each Other

In determining whether the Settlement is fair, reasonable, and adequate, the Court is to consider "whether ... the proposal treats class members equitably relative to each other." Rule 23(e)(2)(D). This is a new factor in the December 2018 amendments, and there is limited case law interpreting it. The Advisory Committee Notes state: "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Recent decisions addressing this factor have considered these matters and support a finding that this Settlement treats the Class Members equitably relative to each other.

In *Swinton v. SquareTrade, Inc.*, 2020 WL 1862470 (S.D. Iowa Feb. 14, 2020), in finding this factor satisfied, the court stated that class members need not be treated "*equally*" (emphasis in original), and focused on whether the settlement reflected differences in the respective injuries of the two separate classes. *Id*. at *18. Decisions from other circuits agree. *See Hudson v. Libre Tech. Inc.*, 2020 WL 2467060, at *9 (S.D. Cal. May 13, 2020) (Rule 23(e)(2)(D) satisfied where settlement did not improperly discriminate between any segments of the class and all class members were entitled to the same relief from the same formula); *Theodore Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020) (this factor was satisfied where the method of distribution was equitable and class representatives did not receive

28

preferential treatment other than seeking reasonable service awards); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (Rule 23(e)(2)(D) satisfied where each class member could make claim for $1.00 cash payment per bottle of products purchased up to 20 bottles); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (factor satisfied where claimants received their pro rata share of the settlement fund); *Burrow v. Forjas Taurus S.A.*, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) (factor satisfied where there was no distinction based on the benefits offered to class members and the scope of the release was not inequitable and was specific to the subject matter addressed in the lawsuit); and *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *8 (N.D. Ohio Aug. 12, 2019) (factor satisfied after considering whether "apportionment of relief among class members takes appropriate account of differences among their claims").

Here, each Settlement Class Member who submitted a claim will receive the same amount, which represents more than 92% of the average value of 10 minutes of their first massage session during the Class Period. While the value of each Class Members' claims may vary slightly based on the length of their massage session or the price that they paid, such differences are minimal and there are no differences as to the type or nature of damages for each claim such that different settlement relief among class members is warranted. See *In re Sonic Corp.*, 2019 WL 3773737, at *8 (two categories for the recovery amounts were appropriate where certain class members not only had their information compromised in a data breach but also suffered fraudulent charges). Moreover, it is permissible to base the Class Members' awards on an estimate of their average damages. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 748 (7th Cir. 2008) ("If it were proved that *X* thousand buyers of Kenmores had been deceived, a settlement that provided each with an amount equal to an estimate of the average damages they had sustained" would be

sensible and legally permissible). Nor does the scope of the release affect Class Members in different ways, and it is limited to claims relating to those at issue in this lawsuit. Am. Sett. Agrt., ¶ XI. Moreover, Class Members presumably agree that they were treated equitably because none objected on the grounds of disparate treatment. Accordingly, this element is met or, at least, favors approval of the Settlement.

### B.  The Settlement Agreement Meets the Additional *Van Horn* Factors

This Settlement meets the two *Van Horn* factors that are not expressly incorporated into the 2018 amendment to Rule 23(e)(2), the defendant's financial condition and amount of opposition to the settlement.

**Defendant's financial condition.** This factor does not warrant disapproving the Settlement. There is no evidence in the record that calls Massage Envy's ability to pay for its settlement obligations into question, and this factor is therefore neutral. See *Keil*, 862 F.3d at 697-98; *Marshall*, 787 F.3d at 512 (finding this factor neutral where neither party disagreed that the defendant was in good financial standing and could pay for its settlement obligations).

**The amount of opposition to the settlement.** Opposition, if there is any at all, is minimal. As noted above, no Class Members filed objections, and only six opted out. This Settlement did not even attract so-called "professional objectors" and none of the fifty-six (56) officials (including the Attorney Generals of each of the fifty (50) states, the District of Columbia and the Territories of the United States) who received notice of the Settlement objected. *See Devlin v. Scardelletti,* 536 U.S. 1, 23 n. 5 (2002) (Scalia, *dissenting*) (*quoting Shaw v. Toshiba America Information Systems, Inc*., 91 F.Supp.2d 942, 973 (E.D. Tex. 2000). In *Kautsch v. Premier Commc'ns*, 2008 WL 11426766, at *3 (W.D. Mo. Nov. 20, 2008)), the court found that the absence of objections to the settlement demonstrated that it was "fair, reasonable, and adequate." The same is true here.

## VI.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of

the Settlement.

Dated: September 10, 2020              Respectfully submitted,

**LAW OFFICE OF RICHARD S. CORNFELD, LLC**


By:    */s/ Richard S. Cornfeld*
           Richard S. Cornfeld, #31046MO
           Daniel S. Levy, #66039MO
           1010 Market Street, Suite 1645
           St. Louis, Missouri 63101
           P. 314-241-5799
           F. 314-241-5788
           rcornfeld@cornfeldlegal.com
           dlevy@cornfeldlegal.com

           And

           Michael J. Flannery, #52714MO
           CUNEO GILBERT & LADUCA, LLP
           500 North Broadway, Suite 1450
           St. Louis, Missouri 63102
           Telephone: (314) 226-1015
           mflannery@cuneolaw.com

           And

           Anthony S. Bruning, #30906MO
           Anthony S. Bruning, Jr., #60200MO
           Ryan L. Bruning, #62773MO
           Edward M. Roth, #37294MO
           THE BRUNING LAW FIRM, LLC
           555 Washington Avenue, Suite 600
           St. Louis, Missouri 63101
           P. 314-735-8100 / F. 314-898-3078
           tony@bruninglegal.com
           aj@bruninglegal.com
           ryan@bruninglegal.com
           eroth@bruninglegal.com

           ***Attorneys for Plaintiffs***

31

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically

with the Clerk of Court to be served by operation of the Court's electronic filing system upon all

Counsel of Record this 10th day of September, 2020.


　　　　　　　　　　　　　 _/s/ Richard S. Cornfeld_____